UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| WALTER McMANUS | : | CIVIL ACTION NO. 2:01CV0951 |
| VERSUS | : | JUDGE TRIMBLE |
| PERFORMANCE MEDICAL GROUP, INC. | : | MAGISTRATE JUDGE WILSON |

### PLAINTIFF'S REPLY MEMORANDUM

## I    OVERTIME HOURS CLAIMED

The central, or predominant issue in this case involves plaintiff's contention that defendant was always aware of the overtime hours plaintiff worked and that because of this awareness, coupled with a failure to enforce its "overtime authorization" policy, defendant "suffered" or allowed plaintiff to continue working overtime and violated the FLSA by refusing to pay time and a half for the overtime hours. Defendant, of course, argues otherwise and maintains that the entire claim should be rejected because the overtime hours claimed, but not paid for, were not authorized to be worked by either the defendant, or the customer.

Additionally, in its memorandum, defendant strenuously argues that regardless of the merits of the "authorization" argument, the Court should initially completely reject 48% of the total 388 overtime hours claimed by the plaintiff (78 in 1988, 206 in 1999, and 104 in 2002, totaling 388 overtime hours) because proof is lacking that McManus worked over 40 hours during the weeks that the FSR reported hours do not total over 40. In brief (pp. 13-16), defendant has identified 18 weeks in 1998, 31 weeks in 1999, and 24 weeks in 2000 during



1

which the hours reported on FSR's do not add up to 40 hours for the identified weeks. Defendant argues that for these weeks, the overtime hours reported on the FSR are not "FLSA" overtime hours, and consequently, there is no FLSA obligation to pay time and a half the regular rate for these hours.

Defendant's argument should be rejected. McManus credibly testified he was not required to fill out an FSR, or any other time keeping form, documenting eight hours of work per day. This was so since May 14, 1998, when Mr. Mouton issued a memo specifically instructing that the recordation of hours by McManus, accounting for eight hours of work each day, was no longer required. (Plaintiff Exhibit 2). The May 14, 1998 memo is not ambiguous. It requires an olympian jump to accept defendant's explanation that this document was meant only as instructions to technicians ". . . that they no longer were required to fill out an FSR on those days that they were on call but not dispatched to work. (Defendant's Brief, p.15). If this is what the memo was intended to announce, Mr. Mouton should have had no trouble in expressing such a message. But this is not what the memo states. For obvious reasons, defendant now maintains that the memo does not mean what it states. Defendant claims the memo does not mean what it states because the memo establishes exactly what Mr. McManus claims. Technicians on a daily basis always performed work that did not end up being reported on an FSR. It was this work which no longer needed to be reported. If as defendant argues FSR continued to be needed for billing purposes and are required by the industry, this May 1998 memo must have eliminated only the requirement to report hours worked on task that were not generally reported on an FSR.

2

McManus credibly testified that he performed work on a regular basis that did not end up being reported on an FSR, and the memo, which eliminated the need to report these hours, corroborate his testimony. For instance, McManus testified that on a regular basis he would report to the Lafayette office and remain at that office until dispatched to service a client. This testimony is not reflected.

Additional corroborating evidence of McManus' testimony that he always worked a minimum of a 40 hour work week, and that the overtime as shown on the FSR's is in fact hours over 40 per week is the biweekly payroll records found in defendant's bench book (Autopay Payroll Registers). (Exhibit 5, #0001, 14, 33, 34, 69, 81, 87, 94, etc.). A review of these payroll records for 1998 shows that with the exception of payroll period ending November 15 and December 15, for each two week period beginning July 15, 1998, the plaintiff was paid for 86.67 regular hours. The fact that the FSR's submitted during each pay period may not add up to 86.67 hours, or a greater figure, is a result of McManus not being required, in accordance with the memo of May 14, 1998, to record all his work time. For 1999, 19 of the 24 pay period records report regular hours of 86.67 for every two-week period of time. These records, along with McManus' testimony that he worked 40 hours per week, plus the FSR recorded overtime on a regular basis, combined with the established fact that McManus was not required to even report a 40 hour work week, provide very credible evidence that McManus worked overtime in each of the weeks overtime hours are claimed.

The defendant's contention that the FSR's reflect all the hours worked week by week is not backed up with corroborative evidence. Again, the company's payroll records show that McManus consistently worked regular hours of 86.67 hours during each two week pay period.

3

These same payroll records show that McManus was not paid for huge numbers of overtime hours recorded on the FSR's.

Once McManus provided the Court with evidence that he worked a certain amount of overtime (the overtime recorded on the FSR's), it was incumbent upon Performance to come forward with evidence refuting McManus' claim.  In an FLSA case once the plaintiff has presented credible testimony and corroborating evidence of the approximate number of overtime hours worked per week, it is incumbent upon the defendant to present evidence of the exact number of hours worked, or evidence to negate plaintiff's reasonable estimation of the number of hours. If the employer does not come forward with this evidence, the Court should award the overtime pay to the employee even though the award may be based on an approximation of the number of hours worked. Reich v. Southern New England Tele Comms. Corp., 121 F.3d 58, 66 (2d Cir. 1997); Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946). Plaintiff's testimony, the FSR's, the July 14, 1998 memo, and plaintiff's bimonthly payroll records provide a solid evidentiary basis for the Court to conclude that the overtime hours shown on the plaintiff's exhibit to its original brief are in fact hours for which the plaintiff is entitled to be paid the overtime wage rate. There is no basis for the court to reject 48% of the overtime hours.

## II   COMPENSATORY TIME OFF

Performance's defense to the time off it mandated plaintiff take in lieu of the overtime pay constitutes compelling evidence of the defendant's lack of good faith and its disregard for and effort to avoid the law. Defendant maintains that compensatory time was imposed on McManus in accordance with a "plan" that was within the framework of a particular section

4

of the Department of Labor, Wage and Hour Division, Field Operation handbook which allows an employer to "layoff" an employee for the number of overtime hours worked. In evaluating this defense, it should be recalled that neither of defendant's witnesses testified that a plan was in effect which met with the requirements of Section 32(j) 16(b). Additionally, the section of the Department's handbook quoted in defendant's brief should be analyzed in regard to the actual practice that occurred during the time in question. The handbook "time off plan" describing a plan which includes a ". . . fixed wage or salary each pay period, even though the employee works overtime in some weeks or weeks within the pay period" does not remotely describe the defendant's pay practices. Mr. McManus was never under a pay plan that called for a fixed salary regardless of the number of hours worked in a pay period. The pay plan he worked under required overtime pay for each week he worked over 40 hours. Additionally, the Department of Labor's handbook states that the plan provides that ". . . control of earnings by control of the number of hours an employee is permitted to work, not payment for overtime in time off, is the essential principal of the time off plan." Thus, the plan does not allow overtime be paid for by mandating time off. Defendant's records show that on each occasion McManus received compensatory time off, the time off was provided in lieu of overtime. These records establish that a plan never existed that came anywhere close to fitting the requirements of the handbook. Please note that on page 13 of its original brief, plaintiff pointed out that three memos, dated May 25, 1998, May 4, 1999, and May 15, 2000 state that management has decided to provide time off in lieu of overtime pay. These memos prove that defendant was "paying" Mr. McManus for overtime work with time off rather than money. This is exactly what the handbook plan prohibits.

5

Obviously, there was "no plan" consistent with the cited regulation. Once the claim for overtime was presented, defendant apparently began to search long and hard for provisions of the FLSA and/or regulations of the Department of Labor that could be used to excuse the misconduct and the quoted handbook provision was the closest "fit" it could find. For Mr. Mouton to suggest to the Court that his company had such a plan in place and was providing time off to Mr. McManus in accordance with such plan, should cause the Court to be critical of his self-serving testimony in other areas of the case, particularly in regard to the good faith claim and the claim that a reasonable basis for Performance's failure to comply with the FLSA existed.

In regard to the amount of time off provided to Mr. McManus and the amount of overtime pay owed for this comp time, plaintiff's brief mistakenly understates the amount of premium pay owed. Defendant's brief identifies nine full days of compensatory time off. In each instance, defendant mandated Mr. McManus take this time off. The four days in 1998/1999 require payment of 32 hours at $28.16 which equals $901.12, and for the five days in 2000 payment of 40 hours times $30.98 equals $1,239.20.

## III   LIQUIDATED DAMAGES

The Court, in its discretion, may award liquidated damages in the amount of double the overtime pay owed, or in a lesser amount. The Court should provide liquidated damages in the full amount unless defendant prove that (1) it was in good faith in not making the payments, and (2) that its failure to pay was predicated on reasonable grounds. Plaintiff maintains that the defendant cannot show either of these two requirements.

6

Plaintiff knew that it was required to pay time and a half for hours worked over 40 hours per week. It acknowledged as much through Mr. Mouton's testimony that a labor attorney provided advice in regard to Policy No. 40.3. So, in regard to the requirement to pay for overtime, the record establishes that since May 14, 1998, when defendant did away with the requirement that McManus report all time worked during the day, defendant was aware that McManus was working a certain number of hours that were not being reported on FSR's. Defendant, knowing that the FSR's did not report all hours worked, did not have a good faith reason to reject Mr. McManus' claim for overtime hours worked.

Defendant knew that overtime pay was required by the FLSA for hours worked beyond 40 per week. It knew that McManus was working beyond 40 per week on a regular basis. Defendant had access to a labor attorney who very quickly could have answered any question regarding its reliance on the written overtime authorization policy. Had defendant asked its attorney if it was required to pay for overtime worked of which it was aware, defendant would have been told that it had an affirmative duty to inform the plaintiff that he should stop working the unauthorized overtime, and if it did not it was liable for the pay. It had to do more than just publish the policy. Defendant had an obligation to enforce as well as publish. Defendant did not do this and consequently liquidated damages should be provided. In Barcellona v. Tiffany English Pub, 597 F.2d 464 (5th Cir. 1979), the Court stated that to avoid liquidated damages, the defendant has the burden of proving good faith and it must prove that failure to pay was predicated on reasonable grounds. The Court determined that reasonable grounds could not be established when the defendant had not undertaken an investigation to discover its liability under the FLSA. (P. 469). In Caserta v. Homeline Agency, Inc., SDNY

7

1959, 172 F.Supp. 409, modified on other grounds, 273 F.2d 943, the Court determined good faith was lacking and awarded liquidated damages in an overtime pay situation in which the employer did not pay overtime wages to an employee who failed to report overtime hours on a time sheet, but was known by the employer to be working the overtime. In this case, the company was apparently content to reap the benefits of Mr. McManus' diligent efforts which resulted in the customer paying for McManus' overtime hours which Performance received for free. Defendant contends that this is not the case -- that the customer was not billed for the overtime. (Defendant's Brief, p. 11). However, the testimony of defendant's witnesses was that the hours reported by McManus on the FSR's were not modified or adjusted downward. Corroborating the testimony which established that the customer was billed in full for all hours worked is the statement in the defendant's brief that the FSR's ". . . are a necessary part of defendant's billing system." (P. 15). Additionally, there is no testimony or evidence indicating any source whatsoever, other than the FSR, from which defendant would obtain information about the number of hours worked to satisfy the customer's needs.

## IV    A WILLFUL VIOLATION – THREE YEAR PERIOD

The controlling case is McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 1681 (1988). In McLaughlin, the Supreme Court determined that a willful violation finding required more than just evidence of negligent conduct. The Court held:

> The word "willful" is widely used in the law, and, although it has not by any means been given a perfectly consistent interpretation, it is generally understood to refer to conduct that is not merely negligent. The standard of willfulness that was adopted in Thurston – that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute – is surely a fair reading of the plain language of the Act.

8

Surely, in a situation in which the employer is put on notice on a weekly basis (by the FSR's) that an employee is working beyond 40 hours per week, but fails to pay the employee for the overtime because the employer has a written policy that the overtime must be approved, but allows the employee to continue to work the overtime on a regular basis, the employer's violation of the FLSA is not the result of mere negligence. On a weekly basis, Performance received written reports which documented overtime hours worked by Mr. McManus, and it made a deliberate decision not to pay for these overtime hours. This misconduct was in clear violation of a basic regulation, 29 C.F.R. § 785.13 which does not allow the employer to reap the benefits of the employee being permitted or "suffered" to work the uncompensated overtime hours. Further, evidence that the failure to pay was not accidental or the result of mere negligence is provided by the attempt to disguise the deliberate misconduct of providing compensatory time to be an element of a non-existent pay plan which conformed with a provision of the Department of Labor's field handbook.

Additional deliberate misconduct is established by defendant's efforts to convince the Court that the May 14, 1998 memorandum (Plaintiff Exhibit 2) does not mean what it states. The defendant was compelled to maintain that the document states something other than what it says because an acknowledgment of the instructions conveyed in the letter will completely undermine Performance's defense that hours beyond FSR hours were not worked.

**V      THE CLAIM FOR WAGES UNDER LA. R.S. 23:631-632**

The defendant is in error in regard to the lawsuit not being a sufficient demand for pay. In M & B Simon Co. v. Blanchard, 389 So.2d 401 (4th Cir. 1980) and Ruffin v. Klein, 209

9

So.2d 45 (4th Cir. 1968), the courts specifically held that the lawsuit may serve as the demand for payment.

For the reasons asserted in plaintiff's original brief, the money owed for overtime work performed on Saturday and Sunday which remains unpaid triggers the penalty wage and attorney fees. The defendant has not offered a reasonable basis for failing to pay the time reported. In fact, the undersigned does not recall defendant's witnesses addressing this failure to pay. In effect, the defendant has not presented a defense other than the argument that a demand by the plaintiff was needed in order to perfect the claim. The law is otherwise, and defendant should be held liable for the amount of pay owed, as well as the 90 day penalty wage and reasonable attorney fees.

Respectfully submitted,

EDWARD J. FONTI - #5676
JONES, TETE, NOLEN,
FONTI & BELFOUR, L.L.P.
Post Office Box 1930
Lake Charles, LA 70602-1930
(337) 439-8315

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the above and foregoing has this day been served upon counsel for all parties to this proceeding by placing same to each by First Class United States mail, properly addressed and postage prepaid on this 7th day of October, 2002.

EDWARD J. FONTI

10

# JONES, TÊTE,
# NOLEN, FONTI & BELFOUR, L.L.P.

### ATTORNEYS AT LAW

POST OFFICE BOX 1930

LAKE CHARLES, LOUISIANA 70602-1930

TELEPHONE (337) 439-8315

WILLIAM M. NOLEN
EDWARD J. FONTI
GREGORY W. BELFOUR
ROBERT J. TÊTE

TELEFAX (337) 436-5606
TELEFAX (337) 433-5536

October 7, 2002

SAM H. JONES (1897-1978)

OF COUNSEL:
WILLIAM R. TÊTE
EDWARD D. MYRICK*

STREET ADDRESS:
FIRST FEDERAL BUILDING
1135 LAKESHORE DRIVE
SIXTH FLOOR
LAKE CHARLES, LA 70601

*A PROFESSIONAL
LAW CORPORATION

Honorable Robert H. Shemwell
Clerk of Court
United States District court
300 Fannin Street, Suite 1167
Shreveport, LA 71101

RE:    Walter McManus
       Vs. No. 2:01CV-0951
       Performance Medical Group, Inc.

Dear Mr. Shemwell:

On behalf of plaintiff, enclosed please find the original and one copy of "Plaintiff's Reply Memorandum." Please file the original in the record and return one filed-stamped copy to me for my records.

By copy of this letter I am serving the Honorable James T. Trimble, Jr. and counsel of record with a copy of the aforementioned reply memorandum.

With kindest personal regards, I remain

Very truly yours,

EDWARD J. FONTI

EJF/mda
Enclosure

cc:    Honorable James T. Trimble, Jr. (w/encl.) - VIA HAND DELIVERY
       Jeffrey A. Rhoades (w/encl.)